| | | |
|---|---|---|
| JEFF L. KNOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:09-cv-115 |
| | ) | Judge Edgar |
| SUNTRUST BANKS, INC. and | ) | |
| SUNTRUST BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Jeff L. Knox ("Knox") brings this employment discrimination suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 - 2000e-17, and the Tennessee Human Rights ACT ("THRA"), Tenn. Code Ann. §§ 4-21-101 - 4-21-401. Knox was employed by defendant SunTrust Bank from June 5, 2006, until his employment was terminated on October 17, 2008. During his last year of employment, Knox worked as an Assistant Branch Manager in Chattanooga, Tennessee, under the direct supervision of Rob Majors ("Majors").

Knox is a married, heterosexual male and a member of the Christian faith who is an active member of the Baptist church. Majors is a homosexual male. In his first amended complaint [Doc. No. 14], Knox makes the following employment discrimination claims under Title VII and the THRA. Knox claims that he was a victim of sexual and religious harassment by supervisor Majors which created a hostile work environment.

Knox further claims that he suffered retaliation in two ways. First, Knox contends that he was terminated from employment in retaliation for making complaints to SunTrust Bank about the sexual and religious harassment, and the hostile work environment created by supervisor Majors.

Second, it is claimed that Majors retaliated by making negative and inappropriate comments about Knox to a potential employer, Regions Bank, which caused Knox to lose an employment opportunity with Regions Bank.

Knox seeks an award for lost wages and the value of all employment benefits he has lost from the date of the termination of his employment and the retaliation. Knox demands reinstatement to his former position as an Assistant Branch Manager or equivalent jobs with all employment rights and benefits to which Knox would have been entitled but for his discharge from employment, and without harassment or illegal conditions being imposed on his job. In the alternative, Knox demands front pay and benefits in lieu of reinstatement. Knox also demands compensatory damages for humiliation and embarrassment, pain and suffering, and emotional distress. Finally, Knox seeks to recover his attorney fees and costs of this action.

There is presently before the Court a motion by defendants SunTrust Banks, Inc. and SunTrust Bank for summary judgment pursuant to Fed. R. Civ. P. 56. [Doc. No. 25]. Knox opposes the summary judgment motion. [Doc. No. 30].

After reviewing the record, the Court concludes that the summary judgment motion will be granted in part as follows. Knox's complaint against defendant SunTrust Banks, Inc. is dismissed with prejudice because Knox was not employed by SunTrust Banks, Inc. Defendant SunTrust Bank was Knox's sole employer in this case. Both retaliation claims are dismissed with prejudice.

The remainder of the defendants' summary judgment motion will be denied because there are genuine issues of material fact in dispute which preclude summary judgment under Rule 56. Knox may proceed to trial on his claims under Title VII and the THRA that he is a victim of sexual and religious harassment which created a hostile work environment.

# I.   <u>Standard of Review</u>

Summary judgment is proper if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a mater of law.  Fed. R. Civ. P. 56(c); *Van Gorder v. Grand Trunk Western Railroad, Inc*., 509 F.3d 265, 268 (6th Cir. 2007); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported  motion for summary judgment. The  requirement is that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986); *Lovelace v. BP Products North America, Inc*., 252 Fed. Appx. 33, 39 (6th Cir. 2007); *Talley*, 61 F.3d at 1245.  Material facts are only those facts that might affect the outcome of the action under the governing substantive law.  The applicable substantive law will identify and determine which facts are material.  *Anderson*, 477 at 248; *Lovelace*, 252 Fed. Appx. at 39; *Talley*, 61 F.3d at 1245.

Defendants bear the initial burden of demonstrating there are no genuine issues of material fact in dispute.  Defendants may satisfy this burden either by presenting affirmative evidence that negates an essential element of plaintiff Knox's claim, or by demonstrating the absence of evidence to support a claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003); *Talley*, 61 F.3d at 1245.

Once the defendants meet this initial burden, plaintiff Knox is not entitled to a trial on the basis of mere allegations.  To defeat a summary judgment motion, Knox is required to come forward with probative evidence and facts to support his claim and show that a trial is necessary to resolve a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 249; *Van Gorder*, 509 F.3d at 268; *Rodgers*, 344 F.3d at 595.  A scintilla of evidence is insufficient to

preclude summary judgment. There must be admissible evidence on which a reasonable jury could find in the plaintiff's favor. *Anderson*, 477 U.S. at 248, 252; *Van Gorder*, 509 F.3d at 268; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000); *Hartsell v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Talley*, 61 F.3d at 1245; *Mitchell v. Toledo Hospital*, 964 F.2d 577, 581-82 (6th Cir. 1992).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. Because Knox bears the burden of proving his claims, he must present probative facts and evidence showing there is a genuine issue of fact for a jury to decide at trial as to each element of his claims. *Id.*; *Van Gorder*, 509 F.3d at 268; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Hartsell*, 87 F.3d at 799.

The Court's role at the summary judgment stage is to determine whether the record contains sufficient facts and admissible evidence from which a jury could reasonably find in favor of Knox. *Anderson*, 477 U.S. at 248; *Rodgers*, 344 F.3d at 595; *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001); *Talley*, 61 F.3d at 1245. The Court views the facts in the record and all reasonable inferences that can be drawn from the facts in the light most favorable to Knox. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Van Gorder*, 509 F.3d at 268; *National Satellite Sports*, 253 F.3d at 907. The Court cannot weigh the evidence, judge credibility of witnesses, or determine the truth of matters reasonably in dispute. *Anderson*, 477 U.S. at 249; *Talley*, 61 F.3d at 1245.

## II.     SunTrust Banks, Inc. Not Plaintiff's Employer

Defendants move to dismiss the complaint against SunTrust Banks, Inc. Defendants assert that Knox was employed only by SunTrust Bank and that Knox has never been employed by

SunTrust Banks, Inc. [Doc. No. 29, p. 34]. Knox states that so long as the defendants will stipulate that SunTrust Bank is the proper employer, Knox will agree to dismiss his complaint against SunTrust Banks, Inc. without prejudice. [Doc. No. 30, p. 34].

The Court concludes that Knox's complaint against SunTrust Banks, Inc. shall be dismissed with prejudice. The record shows that Knox's employer was SunTrust Bank and this is not disputed by the defendants. There is no proof that Knox was employed by SunTrust Banks, Inc.

## III. Same Standards and Analysis Under Title VII and THRA; Employer's Legitimate Business Decisions

Knox brings his claims under Title VII and the Tennessee Human Rights Act. The THRA mirrors federal law under Title VII. The THRA is intended to be coextensive with and to further the policies embodied in Title VII. Tenn. Code Ann. § 4-21-101(a)(1); *Allen v. McPhee*, 240 S.W.3d 803, 812 (Tenn. 2007); *Parker v. Warren County Utility District*, 2 S.W.3d 170, 172 (Tenn. 1999). The Title VII and THRA employment discrimination claims must be analyzed together applying the same standards. The Court's disposition of the Title VII claims applies with equal force to the companion THRA claims. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999); *Guster v. Hamilton County Department of Education*, 2004 WL 1854181, * 17 (E.D. Tenn. March 2, 2004); *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

Title VII and the THRA do not diminish the traditional prerogatives of employer SunTrust Bank to make policy and business decisions that are not motivated by unlawful discrimination or retaliation. *United Steelworkers of America v. Weber*, 443 U.S. 193, 207 (1979); *Yoong v. Oakland*

*County*, 176 Fed. App. 644, 650 (6th Cir. 2006); *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 435 (6th Cir. 2002); *Wrenn v. Gould*, 808 F.2d 493, 502-03 (6th Cir. 1987); *Seay v. Tennessee Valley Authority*, 340 F. Supp.2d 832, 842 (E.D. Tenn. 2004).

Title VII and the THRA are not designed to intrude the federal courts directly into complex assessments of employment qualifications, staffing requirements, and employee productivity. It is axiomatic that under Title VII and the THRA this Court does not sit or act as a "super-personnel department" to re-examine and second guess an employer's legitimate management prerogatives and nondiscriminatory business decisions. *Adams v. Tennessee Dept. of Finance and Administration*, 179 Fed. Appx. 266, 272 (6th Cir. 2006); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000); *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir. 2002); *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999); *Harvey v. Annheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994); *Seay*, 340 F. Supp.2d at 842; *Guster*, 2004 WL 1854181, at * 18; *Spann v. Abraham*, 36 S.W.3d 452, 467 (Tenn. Ct. App. 1999). The Court's aim in adjudicating a Title VII claim "is not to review bad business decisions, or question the soundness of an employer's judgment." *Adams,* 179 Fed. Appx. at 272 (quoting *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 549 (6th Cir. 1991)).

Title VII and the THRA do not require SunTrust Bank to make perfect business decisions regarding its employees, nor is SunTrust Bank prohibited from making nondiscriminatory business decisions that others may disagree with. *Stewart*, 207 F.3d at 378; *Hartsel*, 87 F.3d at 801; *Seay*, 340 F. Supp.2d at 842. The issue to be resolved in this case is not whether SunTrust Bank made good or prudent business decisions. *Guster*, 2004 WL 1854181, at * 18; *Spann*, 36 S.W.3d at 467. To the extent that SunTrust Bank merely treated its employee, Jeff Knox, below someone's general standard of what constitutes fair treatment, there is no basis for imposing liability under Title VII

and the THRA. *Adams,* 179 Fed. Appx. at 272; *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir. 1988). Absent evidence of unlawful discrimination or retaliation, the Court may not label the acts and business decisions of SunTrust Bank as being in violation of Title VII and the THRA, even if this Court might have acted differently or made a different business decision had the Court been Knox's employer. *Adams,* 179 Fed. Appx. at 272.

## IV. Facts

When Knox began his employment with SunTrust Bank, he worked as a Financial Services Representative at two branch offices. He received excellent evaluations for employee performance and was promoted to Assistant Branch Manager at the Northside branch office in Chattanooga in October 2007. The name of the Northside branch was later changed to the Bridgeview branch after SunTrust Bank moved into a new building in August 2008. The Court will refer to it as the Bridgeview branch with the understanding that this also includes all references to when the bank office was previously known as the Northside branch.

Majors, the manager at the Bridgeview branch office, was Knox's direct supervisor. Knox worked there for approximately one year until his employment was terminated on October 17, 2008. As Assistant Branch Manager, Knox was the next person in charge whenever Majors was out of the office or unavailable. Knox was responsible for driving sales to customers, and for "coaching the team" of bank employees in providing customer services.

Before he began working at SunTrust Bank, Knox was provided with his employer's policy handbook and Code of Business Conduct and Ethics. The Code of Conduct provided in part:

> The SunTrust Code of Business Conduct and Ethics expresses the core values of our company. Each employee of the company must read, understand and abide by the letter and spirit of the Code. The honesty, integrity and sound judgment of our employees are essential to SunTrust's

reputation and success....

\*      \*      \*      \*

SunTrust requires honest and accurate recording and reporting of informa-
tion ... all business transactions must be properly and accurately recorded
in a timely manner on SunTrust's books and records in accordance with
applicable accounting standards, legal requirements and SunTrust's system
of internal controls.

\*      \*      \*      \*

The books, records and accounts of SunTrust must accurately and fairly
reflect the Company's transactions and operations....

Failure by an employee to follow and comply with both the letter and spirit of the Code of Conduct

subjected the offending employee to disciplinary action, including termination.

During the relevant time period in this case, SunTrust Bank had in place equal employment

opportunity and anti-harassment policies which prohibited all forms of unlawful discrimination and

harassment. The policies provided a procedure for employees to make complaints to SunTrust Bank

about charges of discrimination and harassment. SunTrust Bank widely publicized its anti-

discrimination and anti-harassment policies to its employees including Knox. SunTrust Bank

conducted regular, mandatory training sessions for all of its employees in connection with these

policies. The training sessions were designed to create and maintain a workplace free from

discrimination and harassment prohibited by Title VII and the THRA.

A.    **Hostile Work Environment Based on Sexual and Religious Harassment**

Knox alleges that during the course of the one year that he worked under Majors'

supervision, Knox was subjected to a pattern of continuous sexual and religious harassment by

Majors. Knox contends that the harassment started off in relatively mild fashion but escalated in

frequency and intensity, especially in the last few months leading up to his discharge. The incidents

8

of sexual and religious harassment are to some degree interrelated and overlap. Knox contends that Majors became increasingly angry and belligerent when Knox rebuffed sexual advances by Majors which led to more religious harassment by Majors.

The Court will not endeavor here to discuss all of the many twists and turns in the allegations concerning the various incidents of sexual and religious harassment that form the basis for Knox's hostile work environment claim. For the sake of brevity, the Court will summarize the gist of Knox's allegations to demonstrate that Knox has at least made out a *prima facie* hostile work environment claim that survives SunTrust Bank's summary judgment motion.

Knox alleges the following incidents of sexual harassment beginning in the latter part of 2007 and continuing into 2008. On numerous occasions Majors called Knox into his private office so that Knox could listen to flirtatious telephone conversations between Majors and his homosexual life partner. When Knox would ask to leave, Majors directed Knox to stay. Majors would not allow Knox to leave the office.

During these telephone conversations, Majors referred to his homosexual life partner as "baby." Majors often laughed or giggled and tried to involve Knox in the conversations. Sometimes the conversations involved discussions of what Majors and his homosexual life partner did the night before and Majors would tell his partner: "We can't talk like that baby." Majors talked with his homosexual life partner in a very private, low tone of voice which Knox interpreted as intimate discussions about sexual matters.

Majors frequently referred to Knox as "baby" which is the nickname or term of endearment that Majors used for his homosexual life partner. Majors denies calling Knox by the nickname "baby." Majors contends that he only referred to Knox as "buddy."

Majors made efforts to get physically close to Knox. On several occasions Majors put his face very close to Knox's neck and said that he wanted to smell Knox's cologne. In response, Knox plainly indicated to Majors that Knox was not receptive to such conduct. Knox brought his shoulder up close to his head to shield his neck from the sniffing and moved away from Majors. Knox did not invite or welcome the efforts by Majors to place his face in very close proximity to Knox's neck and face. Despite Knox's objections and efforts to rebuff such conduct, Majors continued his unwelcome efforts to get physically close and smell Knox's neck and cologne.

On a number of occasions Majors placed his hand on top of Knox's hand and/or Majors attempted to hold hands with Knox. There was physical contact through touching of their hands. Knox did not initiate, invite, or welcome this physical touching and hand holding.

Majors sometimes blatantly stared at Knox's private body parts. While Majors looked up and down Knox's body, Majors asked if Knox had been working out or exercising.

On one occasion in the Fall of 2008, Majors took Knox to Major's residence during normal work hours. Majors had to deliver an item to another bank branch and Majors instructed Knox to accompany him on the errand. After making the delivery and when it was time to return to the Bridgeview branch office, Majors said that he needed to stop by his house which was out of the way. During the automobile ride, Majors made a telephone call to his mother and Majors kept looking over at Knox. Knox asked why Majors kept looking over at him and Majors replied, "It is an HR issue." The term "HR" is an obvious reference to the Human Resources Department at SunTrust Bank. When Knox asked why it was an HR issue, Majors replied that his mother said Knox was so cute and had beautiful eyes. Majors also said that, according to his mother, if Knox were the same age as the mother, Knox would be in trouble. When they arrived at Majors' house, Knox declined

an invitation from Majors to go inside the house. Knox was fearful of what Majors might do once inside the house with regard to potential sexual advances.

This pattern of continuous harassment and tension escalated throughout 2008. Majors increasingly treated Knox with hostility due to Knox's rejection of Majors' sexual advances. Majors would become angry and stay mad for days at a time when Knox rebuffed the sexual advances. When Knox would ask to leave the office during Majors' flirtatious telephone conversations with his homosexual life partner, Majors would become upset and more insistent that Knox stay.

Majors often made disparaging comments about Knox's dedication to his Christian religion and church activities. Knox is an active member of the Baptist church, and he serves as a youth minister and Sunday school teacher. Knox participates in and leads church activities, including church services and events on Wednesday nights. As part of his religious beliefs, Knox abstains from drinking beverages that contain alcohol. Knox was open about his religious beliefs and church activities in the workplace.

Although Majors professes to be of the Catholic faith, he does not attend and is not affiliated with a Catholic church. On Wednesdays, Knox usually worked until the regular closing time at 6:00 p.m. Because church services began at 7:00 p.m., Knox requested that he not be required to work overtime on Wednesday evenings so that he could attend Baptist church services and this caused tension with Majors. Majors frequently made disparaging and hostile remarks to Knox in front of other bank employees about Knox's religion and Knox leaving the office to attend church services on Wednesdays. On numerous occasions Majors referred to Knox as "choir boy," "church boy," and "Christ boy." As the harassment escalated into the summer and fall of 2008, Majors made further comments such as "Don't worry about it, you've got your God. We're going to hit our goals.

11

Why don't you pray to your God?"

On one occasion another SunTrust Bank branch manager, Melissa Lopez, was visiting the Bridgeview branch and Majors made fun of Knox's religious beliefs. Majors told Lopez that Knox was "one of those Christians." Lopez responded by saying, "one of *those* Christians, huh?" On the same day Knox told Majors that he was deeply offended by those comments.

Majors on numerous occasions invited Knox to come to his home for parties where alcoholic beverages would be served. Because it is against his religion to drink alcohol, Knox declined the invitations which caused Majors to become increasingly upset with Knox. Majors was offended that Knox declined the party invitations. Majors made harassing comments to Knox, such as "Wednesday night church boy" and "church boy don't drink."

During the fall of 2008, Knox could no longer stand or tolerate the constant harassment from Majors and the increasingly hostile work environment. Knox submitted an application to SunTrust Bank to be transferred to a different bank branch. Knox did not inform Majors that he had applied for the transfer because he was afraid of Major's reaction. When Majors returned from a vacation on about October 7, 2008, Majors was surprised to learn about the transfer application from his Area Manager, Chrissy McCoy. Majors confronted Knox, and Majors said that he was extremely "pissed off" and angry about it.

After learning about Knox's transfer request, Majors began to place unreasonable work demands on Knox. For example, Majors ordered Knox to go get nine new checking account customers and not to return to work until Knox did so. In Knox's banking and sales experience, this was impossible. Majors stopped handling customer issues as a management team and Knox was taken "out of the loop" on business decisions at the Bridgeview branch.

## B. Incident with Bank Customer Louveda Alexander

SunTrust Bank contends that the decision to terminate Knox's employment was based on a complaint by bank customer Louveda Alexander ("Alexander"). This will be referred to as the Alexander incident.

SunTrust Bank submits an affidavit from Alexander along with Majors's affidavit and excerpts from Majors' deposition which state the following. Alexander had a money market account with SunTrust Bank. In August 2008, Alexander met with Knox at the Bridgeview branch and Knox advised Alexander to use funds from her money market account to purchase a certificate of deposit ("CD") to obtain a higher interest rate. Alexander says that she rejected the advice and told Knox that she did not want to purchase a CD.

On October 9, 2008, Alexander went to the Bridgeview branch and complained to Majors that her bank activity statement showed $50,000 was missing from her money market account. Majors investigated and discovered that on August 20, 2008, Knox transferred $50,000 from Alexander's money market account to purchase a CD for $50,000 in Alexander's name. Knox signed the customer forms requesting the purchase of the $50,000 CD rather than have Alexander sign them, even though Alexander was present and available to sign for herself. After his investigation, Majors met with Alexander along with her son and daughter-in-law. Alexander told Majors that she did not authorize Knox to purchase the CD for her. Alexander did not sign any documents authorizing Knox to use or transfer funds from her money market account to purchase the $50,000 CD. Alexander was very upset and told Majors that she intended to close her accounts with SunTrust Bank but Majors was able to persuade Alexander to maintain her customer accounts at SunTrust Bank.

13

Majors reversed the transaction for the purchase of the $50,000 CD. The CD was closed and the principal amount of $50,000 plus accrued interest of $224.05 was deposited into Alexander's money market account. Alexander did not lose any money. Alexander ended up earning accrued interest of $224.05 on the CD which was a greater amount of interest than she could have earned if the $50,000 had stayed in the money market account which had a lower rate of interest. SunTrust Bank did not suffer a financial loss on the entire transaction.

Majors determined that Knox purchased the $50,000 CD without Alexander's authorization in violation of SunTrust Bank's Code of Conduct. As a result of the unauthorized purchase of the CD, Knox received $2.00 in employee incentive pay.

In response, Knox contends that Alexander authorized him to purchase the $50,000 CD. Knox says that Alexander was an elderly customer. Because of Alexander's desire to conclude their meeting, Knox quickly completed the paperwork relating to the CD. As a customer courtesy and because Knox had Alexander's authorization, Knox filled out and signed the paperwork "per client request." Knox says that Alexander was a longtime bank customer and he had no reason to distrust her oral authorization. After the $50,000 CD transaction was completed, Knox says that he mailed copies of the completed paperwork to Alexander.

Knox denies that he violated any SunTrust policy or the Code of Conduct. Branch managers had some latitude and discretion to complete such paperwork for customers on the basis that it was being done "per client request." Majors and Knox had done this on a few occasions in the past for other bank customers. When Alexander was at the Bridgeview branch in early October, 2008, with her son to meet with Majors, Knox observed the son's behavior. Knox formed the impression that Alexander's family was upset that the $50,000 was no longer easily accessible in the money market

account and that is why Alexander's family wanted to reverse and void the CD transaction.

## C.    Decision to Terminate Plaintiff Knox's Employment on October 17, 2008

On October 15, 2008, Majors notified his supervisor and area manager, Chrissy McCoy ("McCoy"), about the investigation of Alexander's complaint. Majors and McCoy reviewed the matter with Betty Dantzler ("Dantzler"), an Advisor in the Human Resources Department at SunTrust Bank. McCoy wanted to involve Danztler to ensure that any discipline given to Knox would be consistent with discipline imposed on other similarly situated employees who had engaged in similar misconduct. [Doc. No. 29-1, pp. 61-64, Affidavit of McCoy]. McCoy and Dantzler did not meet with and interview Knox concerning the Alexander incident. McCoy and Dantzler only considered the facts and information provided to them by Majors.

Based on the information derived from Majors' investigation, Dantzler recommended that Knox's employment be terminated. SunTrust Bank had a zero tolerance policy for any unauthorized financial transactions in customer bank accounts that would manipulate the employee incentive pay plan. [Dantzler's Deposition, p. 49 at Doc. No. 29-1, p. 4; Dantzler's Affidavit, Doc. No. 29-1, pp. 53-55]. Dantzler considered Knox's conduct in making the unauthorized purchase of the $50,000 CD for Alexander to be manipulation of the employee incentive pay plan which was strictly prohibited by SunTrust Bank and grounds for the immediate termination of Knox's employment. Based on her knowledge and experience with the discipline imposed in similar situations involving other employees and manipulation of the employee incentive pay plan, Dantzler recommended immediate termination of employment as appropriate rather than some lesser form of discipline.

After receiving Dantzler's recommendation, McCoy discussed the Alexander incident with McCoy's supervisor, Rebecca Clayton ("Clayton"). On October 17, 2008, at about 8:45 a.m.,

Clayton, McCoy and Majors made a collective management decision to terminate Knox's employment based in large part on Dantzler's recommendation.

Prior to the termination decision, Knox did not make any oral or written complaints to any SunTrust Bank officials about his charges of sexual and religious harassment by Majors and a hostile work environment. The first time that Knox made any effort to report his charges of sexual and religious harassment and hostile work environment to SunTrust Bank was when Knox went to lunch at about noon on October 17, 2008. Knox was unaware that the decision to terminate had already been made earlier that morning at 8:45 a.m. As he was going to lunch, Knox used his cell telephone to leave voice mail messages with Dantzler and Rosie Russell ("Russell") but this occurred approximately three hours after SunTrust Bank (Clayton, McCoy and Majors) had already decided to terminate Knox's employment.

In his lunchtime voice mail messages to Dantzler and Russell, Knox said that he was upset and there were some things going on at the Bridgeview branch that Knox did not like. Knox said that he was tired of being harassed and he needed to talk with someone. Knox did not provide any details and elaborate on what he meant by the statement that he was tired of being harassed. In his voice mail messages to Dantzler and Russell, Knox did not state or indicate that he was making a Title VII and THRA charge of sexual and religious harassment and a hostile work environment.

Later on the afternoon October 17, Russell forwarded to Dantzler the message that Knox had left on Russell's voice mail. Dantzler did not listen to the voice mail messages from Knox until about 4:00 p.m. on October 17. At that juncture, Knox had already been notified by Majors of the decision to terminate his employment.

Prior to Dantzler listening to the voice mail messages from Knox at about 4:00 p.m., Majors

had a short meeting with Knox at the Bridgeview branch at 2:45 p.m. on October 17. Majors explains that the delay in notifying Knox about the termination decision was due to Majors being extremely busy with other work. Majors informed Knox at 2:45 p.m. that his employment with SunTrust Bank was terminated and Majors instructed Knox to leave the Bridgeview branch. Knox asked to speak with the Human Resources Department but Majors said that Knox could not speak with HR. Knox then said that he had earlier talked with HR and Majors replied that he knew it. [Knox's Deposition, pp. 161-62, Doc. No. 30-1, pp. 68-69]. Knox inferred from this that Majors may have known about Knox's earlier voice mail messages to Dantzler and Russell.

After Dantzler listened to the voice mail messages from Knox at about 4:00 p.m., Dantzler telephoned Knox that same day. Knox complained to Dantzler about the termination of his employment and for the first time Knox made a specific allegation that he had been subjected to sexual harassment by Majors. Dantzler scheduled a meeting with Knox on October 20, 2008, to interview Knox to obtain more information and details about his sexual harassment claim. Dantzler conducted an investigation during which she interviewed Knox, Majors, and some SunTrust Bank employees who had worked with Knox at the Bridgeview branch. The employees that Dantzler interviewed did not corroborate Knox's allegations of sexual and religious harassment.

## V. Hostile Work Environment Claims

### A. Motion to Dismiss Claim of Hostile Work Environment Based on Sexual Harassment on Ground of Failure to Exhaust Administrative Remedy

SunTrust Bank moves to dismiss the claim of a hostile work environment based on sexual harassment on the ground that Knox failed to exhaust his administrative remedy through the Equal Employment Opportunity Commission ("EOOC") and its Tennessee counterpart, the Tennessee

Human Rights Commission ("THRC"). SunTrust Bank argues that the administrative complaint Knox filed with the THRC did not charge gender/sex discrimination or sexual harassment. SunTrust Bank contends that Knox's administrative complaint was not drafted in a way that would give notice to SunTrust Bank, EEOC, and the THRC that such a charge existed.

This argument fails. The Court finds that the record establishes the following facts. On December 3, 2008, Knox filed a *pro se* complaint with the THRC. [Doc. No. 29-1, pp. 80-82]. Tennessee is a deferral state for purposes of enforcing Title VII. *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 375-76 (6th Cir. 2002); *Jackson v. Richards Medical Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992); *Morris v. Chattanooga Housing Authority*, 2007 WL 2238290, * 2 (E.D. Tenn. Aug. 1, 2007).

The complaint was not drafted by an attorney. The THRC complaint form has boxes where a complainant can specify the basis of the discrimination being charged. Knox marked or checked the box indicating a charge of discrimination based on his religion as a Christian, but he did not mark or check the box for sex/gender discrimination.

Question 5 on the complaint form asked Knox whether he had sought assistance from an attorney. Knox answered that he had sought assistance from his brother who is an attorney. Knox stated that in October 2008, he and his brother took the discrimination claim to SunTrust Bank's legal department but after a one-month investigation "nothing was done." [Doc. No. 29-1, p. 81]. Knox states in his deposition that his brother did not assist in drafting the administrative complaint filed with the THRC and SunTrust Bank offers no proof to the contrary.

Although Knox did not mark the box on the complaint form to indicate that he was charging sex/gender discrimination, SunTrust Bank had prior knowledge and was on fair notice of Knox's

charge that he was a victim of a hostile work environment based on sexual harassment by supervisor Majors. On October 20, 2008, SunTrust Bank's Human Resources Advisor Betty Dantzler conducted a post-termination interview with Knox during which Knox discussed and was questioned about his allegations of sexual harassment by Majors. Dantzler took contemporaneous notes during the interview. Dantzler prepared a memorandum setting forth her interview notes which summarize what transpired during her meeting with Knox on October 20, 2008. Knox submits a copy of Dantzler's interview notes. [Doc. No. 30-12, Exhibit L to Plaintiff's Response in Opposition to Summary Judgment Motion]. After reviewing Dantzler's interview notes, the Court finds that SunTrust Bank was on fair notice of Knox's claim that he was a victim of a hostile work environment based on sexual harassment by supervisor Majors, and SunTrust Bank had such knowledge on October 20, 2008, before Knox filed his administrative complaint with the THRC.

Knox brought his charge of a hostile work environment based on sexual harassment to the attention of the THRC during the early phase of THRC's investigation. In December 2008, Knox provided to the THRC a copy of Dantzler's interview notes dated October 20, 2008. Dantzler's interview notes contain a summary of some of Knox's allegations about sexual harassment by supervisor Majors. When Knox mailed Dantzler's interview notes to the THRC, Knox attached his explanatory note which states in part: "Sexual Harassment details." [Doc. No. 30-13, Exhibit M to Plaintiff's Response in Opposition to Summary Judgment Motion]. In sum, Knox informed the THRC that he was making a sexual harassment charge and he provided some factual details to the THRC by way of Dantzler's interview notes.

The Court finds that Knox made a sufficient complaint about sexual harassment to the THRC. Knox provided enough factual allegations to the THRC to exhaust his administrative

remedy on the claim of a hostile work environment based on sexual harassment.  In the wake of Dantzler's interview of Knox on October 20, 2008, SunTrust Bank cannot show that it lacked fair notice of Knox's claim of a hostile work environment based on sexual harassment by supervisor Majors.

As a statutory prerequisite to bringing suit in federal court under Title VII, Knox must exhaust his administrative remedies by timely filing an administrative charge with the EEOC or THRC.  42 U.S.C. § 2000e-5(e)(1); *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 361 (6th Cir. 2010); *Scott v. Eastman Chemical Co.*, 275 Fed. Appx. 466, 470-71 (6th Cir. 2008); *Weigel*, 302 F.3d at 379.  The administrative charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b).

As a general rule, a Title VII plaintiff cannot bring suit in federal court on a claim that was not included in his EEOC administrative charge.  42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver*, 415 U.S. 36, 47 (1974); *Younis*, 610 F.3d at 361 (6th Cir. 2010).  This rule serves two purposes: (1) it gives the employer notice and information concerning the subject of the conduct about which the employee complains; and (2) it affords the EEOC and the employer an opportunity to resolve the dispute at the administrative level.  *Alexander*, 415 U.S. at 44; *Younis*, 610 F.3d at 361-62; *Scott*, 275 Fed. Appx. at 471; *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).  Allowing a Title VII suit in federal court to encompass claims that are not charged in the EEOC administrative complaint and fall outside the reasonable scope of the EEOC investigation would deprive the employer of notice and "frustrate the EEOC's investigatory and conciliatory role." *Younis*, 610 F.3d at 362.

This requirement is not meant to be overly rigid.  *Scott*, 275 Fed. Appx. at 471; *Randolph*

*v. Ohio Dep't of Youth Services*, 453 F.3d 724, 732 (6th Cir. 2006); Knox's *pro se* complaint filed with the THRC must be liberally construed to encompass all claims that are reasonably related to or may be expected to grow out of the investigation of his factual allegations. *Younis*, 610 F.3d at 362; *Scott*, 275 Fed. Appx. at 471. Where facts related to a complaint would prompt the THRC and EEOC to also investigate a different, uncharged claim, the plaintiff employee is not precluded from bringing a Title VII suit in federal district court on the uncharged claim. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010); *Younis*, 610 F.3d at 362; *Johnson v. Cleveland City School*, 344 Fed. Appx. 104, 109 (6th Cir. 2009); *Scott*, 275 Fed. Appx. at 471; *Dixon*, 392 F.3d at 217-19; *Weigel*, 302 F.3d at 380; *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832-33 (6th Cir. 1999); *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463-64 (6th Cir. 1998).

The "expected scope of investigation" test requires Knox to allege sufficient facts in his administrative complaint to place the THRC and EEOC on notice that Knox is making a sexual harassment charge even though he failed or neglected to check the sex/gender discrimination box on the THRC complaint form. *Spengler*, 615 F.3d at 490; *Dixon*, 392 F.3d at 217-19. Knox has met the "expected scope of investigation" test and he is not barred from bringing suit under Title VII and the THRA on his claim of a hostile work environment based on sexual harassment. The motion by SunTrust Bank for summary judgment to dismiss this particular claim on the ground that Knox failed to exhaust his administrative remedy through the THRC and EEOC is denied.

### B.    Elements of *Prima Facie* Claim of Hostile Work Environment

Title VII, 42 U.S.C. § 2000e-2(a)(1), and the THRA, Tenn. Code Ann. § 4-21-401(a)(1) make it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his terms, conditions, or privileges of employment because of the individual's sex or

religion.  Title VII and the THRA afford employee Knox the right to work in an environment free from discriminatory intimidation, ridicule, or insult based on sex and religion that is sufficiently severe or pervasive to alter the conditions of his employment and create a hostile or abusive work environment.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514  (6th Cir. 2009); *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321,332-33 (6th Cir. 2008); *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 765 (6th Cir. 2008).

Title VII's prohibition of sex discrimination protects men as well as women.  Same-sex harassment is actionable under Title VII and Knox may bring a Title VII claim of sexual harassment where his alleged harasser, Majors, is homosexual.  *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998).

The scope of the prohibition against a hostile work environment is not limited to economic or tangible discrimination.  There can be a violation of Title VII and the THRA if Knox can prove that sexual and religious harassment created a hostile work environment without having to prove that he suffered a tangible adverse employment action such as demotion or termination.  However, the harassment must be severe or pervasive.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998); *Harris*, 510 U.S. at 21; *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000); *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 789 (6th Cir. 2000).

To make out a *prima facie* claim of hostile work environment, Knox is required to establish five elements: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment by supervisor Majors; (3) the harassment was based on Knox's sex and/or religion; (4) the harassment had the effect of unreasonably interfering with his work performance by creating an

intimidating, hostile, or offensive work environment; and (5) employer liability. *Faragher*, 524 U.S. at 787-88; *Barrett*, 556 F.3d at 515-16; *Lindsey*, 295 Fed. Appx. at 765.

SunTrust Bank argues that the hostile work environment claim should be dismissed on summary judgment because Knox cannot meet his burden of showing elements 4 and 5 of his *prima facie* case. SunTrust Bank argues that Knox cannot establish that the sexual and religious harassment by supervisor Majors was sufficiently severe or pervasive to create a hostile work environment that is actionable under Title VII and the THRA. It is further argued by SunTrust Bank that Knox cannot show employer liability. SunTrust Bank asserts the affirmative defense to employer liability recognized by the United States Supreme Court in *Faragher*, 524 U.S. at 807-08; and *Ellerth*, 524 U.S. at 764-65. The Court concludes that SunTrust Bank's arguments fail for the following reasons.

### C. Fourth Element of *Prima Facie* Claim: Severe or Pervasive Harassment

Title VII and the THRA were never envisioned to be a general civility code for the American workplace. *Faragher*, 524 U.S. at 788; *Bowman*, 220 F.3d at 464; *Spann*, 36 S.W.3d at 466. It is not the business of the courts under Title VII and THRA to referee common workplace personality conflicts between employees. Title VII and the THRA do not guarantee Knox a utopian workplace or even a pleasant one. *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 600 (6th Cir. 2007); *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994); *Spann*, 36 S.W.3d at 466. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the conditions of employment that are actionable under Title VII and the THRA. *Faragher*, 524 U.S. at 788; *Barrett*, 556 F.3d at 515; *Lindsey*, 295 Fed. Appx. at 766.

To be actionable under Title VII and the THRA, the harassment must be so severe or

pervasive that it alters the conditions of Knox's employment and creates a hostile or abusive work environment. *Faragher*, 524 U.S. at 786; *Harris*, 510 U.S. at 21; *Meritor Sav. Bank*, 477 U.S. at 67; *Lindsey*, 295 Fed. Appx. at 765. Whether harassing conduct is sufficiently severe or pervasive is an issue of fact. *Hawkins,* 517 F.3d at 333; *Jordan v. City of Cleveland,* 464 F.3d 584, 597 (6th Cir. 2006).

In determining whether Knox's work environment was sufficiently hostile or abusive to make out a *prima facie* Title VII claim, the Court considers the totality of the facts and circumstances. *Harris*, 510 U.S. at 23; *Hawkins,* 517 F.3d at 333; *Bowman*, 220 F.3d at 463; *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). The issue is not whether each individual incident of harassment standing alone is sufficient to make out a viable Title VII hostile work environment claim. Rather, the issue to be decided is whether all of the incidents of harassment taken together establish a hostile work environment. *Bowman*, 220 F.3d at 463; *Williams*, 187 F.3d at 562-63.

The factfinder must evaluate the conduct applying both an objective and subjective standard. Knox is required to establish both that Majors' harassing behavior was severe or pervasive enough to create a work environment that a reasonable person would find objectively hostile or abusive, and that Knox subjectively regarded the work environment as hostile or abusive. *Oncale*, 523 U.S. at 81; *Harris*, 510 U.S. at 21-22; *Hawkins,* 517 F.3d at 333. Summary judgment is appropriate if the evidence is so one-sided that there is no genuine issue of material fact in dispute as to whether there existed a hostile or abusive work environment. *Id.*; *Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998).

The objective severity of the harassment is judged from the perspective of a reasonable

person standing in the same position as the plaintiff employee, taking into consideration all of the relevant facts and circumstances. *Oncale*, 523 U.S. at 81; *Harris*, 510 U.S. at 23. In same-sex harassment cases, this "inquiry requires careful consideration of the social context in which the particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81.

> The real social impact of workplace behavior often depends on a con-stellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale*, 523 U.S. at 81-82.

To be actionable under Title VII and the THRA, the harassment must consist of more than words that simply have sexual content or connotations. Instead, the workplace must be permeated with discriminatory intimidation, ridicule, or insult sufficiently severe or pervasive to create an intolerably hostile or abusive work environment that altered the conditions of Knox's employment. *Oncale*, 523 U.S. at 78; *Harris*, 510 U.S. at 21; *Bowman*, 220 F.3d at 463; *Hawkins,* 517 F.3d at 333. A nonexhaustive list of factors to consider includes: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct is physically threatening or humiliating, or a mere offensive oral utterance; and (4) whether the conduct unreasonably interferes with the plaintiff employee's work performance. *Harris*, 510 U.S. at 23; *Hawkins,* 517 F.3d at 333; *Barrett*, 556 F.3d at 515; *Jordan*, 464 F.3d at 597; *Lindsey*, 295 Fed. Appx. at 766.

Comments and harassing acts of a continual nature are more likely to be deemed pervasive. *Hawkins,* 517 F.3d at 333-34; *Abeita*, 159 F.3d at 252. In *Abeita*, the Sixth Circuit reversed the district court's decision to a grant summary judgment in a Title VII hostile work environment case

after determining that the plaintiff employee's allegations that the harasser's ongoing, commonplace, and continuing sexual comments were sufficient to survive the employer's summary judgment motion under the severe or pervasive test. *Abeita*, 159 F.3d at 252; *see also Hawkins,* 517 F.3d at 333-34. When a Title VII plaintiff alleges ongoing or continual harassment, the employee's inability to recount any more specific instances of harassment goes to the weight of the employee's testimony which is matter for the finder of facts at trial. *Hawkins,* 517 F.3d at 334; *Abeita*, 159 F.3d at 252.

Harassment that involves an element of physical invasion is more severe than harassing comments alone. *Hawkins,* 517 F.3d at 334; *Williams*, 187 F.3d at 563. In *Williams*, 187 F.3d at 563, the Sixth Circuit found that harassing sexual comments and one act of physical touching (on one occasion male sexual harasser put his arm around female employee and placed his face against her face) contained an element of physical invasion that, at a minimum, raised an issue of fact for the jury to decide at trial which precluded dismissing the hostile work environment claim on summary judgment. *See Hawkins,* 517 F.3d at 334 (discussing *Williams*).

In the present case there are sufficient facts to warrant a jury trial on Knox's hostile work environment claims and the Court cannot grant SunTrust Bank's motion for summary judgment. Knox alleges a continuous pattern of numerous incidents of harassment by supervisor Majors that were pervasive and lasted for approximately one year. The sexual harassment may be considered severe because it involved an element of physical invasion and touching. Viewing the facts and proof in the light most favorable to Knox under Fed. R. Civ. P. 56, a reasonable jury could find that Knox's workplace at the Bridgeview branch was permeated with discriminatory harassment, insult, and ridicule that was sufficiently severe or pervasive to alter the conditions of his employment and create a hostile or abusive work environment. There are at least genuine issues of material fact in

dispute for a jury to decide at trial. A reasonable jury could find that the continuous incidents of sexual and religious harassment alleged by Knox amount to more than simple teasing, offhand comments, and isolated events of minor significance.

In sum, the Court rejects SunTrust Bank's argument that it is entitled to summary judgment on the ground that Knox cannot establish that the sexual and religious harassment by supervisor Majors was sufficiently severe or pervasive to create an objectively hostile work environment that is actionable under Title VII and the THRA.

### D. Fifth Element of *Prima Facie* Claim: Employer Liability

The Court also rejects SunTrust Bank's argument that Knox cannot show the element of employer liability. SunTrust Bank seeks to rely on the employer's affirmative defense recognized in *Faragher*, 524 U.S. at 807-08; and *Ellerth*, 524 U.S. at 764-65.

In *Faragher* and *Ellerth* the Supreme Court held that under Title VII an employer is vicariously liable to an employee who is the victim of a hostile work environment created by a supervisor with immediate or successively higher authority over the plaintiff employee. When no tangible adverse employment action is taken against the plaintiff employee, the employer may raise an affirmative defense to vicarious liability or damages. The employer bears the burden of proving the affirmative defense by a preponderance of the evidence. There are two elements of the affirmative defense: (1) that the employer exercised reasonable care to prevent and promptly correct any unlawful harassing behavior by the supervisor; and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 807-08; *Ellerth*, 524 U.S. at 765; *see also Morris*, 201 F.3d at 788-89; *Allen v. Michigan Department of Corrections*, 165 F.3d 405, 411-12 (6th Cir.

1999); *Williams*, 187 F.3d at 567; *Reagan v. City of Knoxville*, 2010 WL 2639933, * 8 (E.D. Tenn. June 28, 2010); *Allen*, 240 S.W.3d at 812-13; *Parker*, 2 S.W.3d at 175-76.

> While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. *No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.* (Emphasis supplied).

*Ellerth*, 524 U.S. at 765, *accord Faragher*, 524 U.S. at 807-08.

SunTrust Bank is not entitled to summary judgment on the hostile work environment claim based on this affirmative defense because Knox suffered a tangible, adverse employment action when his employment was terminated. *Faragher* and *Ellerth* hold that the employer's affirmative defense is not available when the supervisor's harassment culminates in a tangible employment action such as the plaintiff employee being discharged from employment.

Knox can make out a plausible case that the sexual and religious harassment by supervisor Majors and the hostile work environment culminated in the termination of Knox's employment. Majors was the source of the information about the Alexander incident that Majors provided to the other officials at SunTrust Bank (McCoy, Dantzler, and Clayton) which resulted in the management decision to terminate Knox's employment. Majors played an active, key role in the meetings and the review process that resulted in the termination decision. It was Majors who notified Knox that his employment was terminated. Based on these facts and circumstances the Court cannot grant

summary judgment in favor of SunTrust Bank on the issue of employer liability. Knox may proceed to trial and seek to prove that SunTrust Bank is vicariously liable for the conduct of supervisor Majors.

## VI.    First Retaliation Claim: Termination From Employment

Knox claims that he was terminated from employment in retaliation for making complaints to SunTrust Bank about sexual and religious harassment by supervisor Majors and a hostile work environment. This claim must be dismissed on summary judgment for three reasons. Knox cannot make out a *prima facie* claim of retaliation. SunTrust Bank has articulated a legitimate, non-retaliatory reason for its decision to terminate based on the Alexander incident and Knox cannot meet his burden of showing that SunTrust Bank's proffered reason is a pretext for retaliation. Moreover, SunTrust Bank is entitled to invoke and rely on the employer "honest-belief" rule.

A Title VII plaintiff may establish retaliation either by direct evidence or circumstantial evidence that would support a reasonable inference of retaliation. Direct evidence is evidence, which if believed, does not require an inference to find that unlawful retaliation was a motivating factor in an employer's adverse action. *Spengler*, 615 F.3d at 491; *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). Knox does not offer direct evidence that SunTrust Bank's decision to terminate his employment was motivated by an intent to retaliate against Knox for exercising his rights protected under Title VII and the THRA to complain about a hostile work environment based on sexual and religious harassment. There is no proof that a person in a management or supervisory position at SunTrust Bank made a direct statement that Knox's exercise of his right to complain about violations of Title VII and the THRA was a motivating factor in the decision to terminate his employment.

29

Absent direct evidence, the retaliation claim is based solely on circumstantial evidence and must be evaluated utilizing the *McDonnell Douglas/Burdine* tripartite burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981); *see also Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *Gembus v. MetroHealth System*, 290 Fed. Appx. 842, 844 (6th Cir. 2008); *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007); *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003).

Knox bears the initial burden of making out a *prima facie* retaliation claim by showing four elements: (1) Knox engaged in activity protected by Title VII and the THRA; (2) employer SunTrust Bank had knowledge that Knox was engaged in such protected activity; (3) SunTrust Bank subsequently terminated Knox's employment; and (4) there is a causal connection between Knox's protected activity and the decision to terminate his employment. *Ladd v. Grand Trunk Western Railroad, Inc.*, 552 F.3d 495, 502 (6th Cir. 2009); *Daugherty*, 544 F.3d at 707; *Gembus*, 290 Fed. Appx. at 844; *Bryson*, 498 F.3d at, 570; *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006); *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *Allen v. McPhee*, 240 S.W.2d 803 (2007).

Knox's burden to establish a *prima facie* retaliation claim is not onerous. *Mickey v. Zeidler Tool and Die Co.,* 516 F.3d 516, 523 (6th Cir. 2008); *Skrjanc*, 272 F.3d at 315; *Christian v. Wal-Mart Stores*, 252 F.3d 862, 870 (6th Cir. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2002). At the *prima facie* stage Knox's burden is minimal, requiring him to put forth sufficient circumstantial evidence from which a causal connection can reasonably be inferred. *Imwalle*, 515 F.3d at 550-51; *EEOC v. Avery Dennison Corp*., 104 F.3d 858, 861 (6th Cir. 1997).

In an effort to show the fourth element of a causal connection, Knox emphasizes that he was terminated on the same day that he complained to SunTrust Bank and Dantzler about charges of sexual and religious harassment. Proximity in time between an employee's exercise of his rights protected under Title VII and the THRA, and the decision to terminate his employment can be circumstantial evidence of retaliation. *Evans v. Prospect Airport Services, Inc.*, 286 Fed. Appx. 889, 894-95 (6th Cir. 2008); *Mickey,* 516 F.3d at 523-26; *Skrjanc*, 272 F.3d at 315. Generally, mere temporal proximity alone is insufficient to establish a causal connection. *Evans*, 286 Fed. Appx. at 895. Where temporal proximity is weighed with additional evidence, the totality of the facts and evidence may be enough to establish a causal connection. *Id.; Arban*, 345 F.3d at 403; *Randolph v. Ohio Department of Youth Services*, 453 F.3d 724, 737 (6th Cir. 2006).

In this case, temporal proximity is not a decisive factor. Temporal proximity would only be relevant if Knox could show that SunTrust Bank made its decision to terminate Knox's employment after Knox made a specific complaint to SunTrust Bank about sexual and religious harassment by supervisor Majors which did not occur here.

The Court finds that Knox cannot establish the third and fourth elements of his *prima facie* retaliation claim. SunTrust Bank made the decision to terminate Knox's employment at 8:45 a.m. on October 17, 2008. Prior to that time and date, Knox had never complained to SunTrust Bank about sexual and religious harassment by supervisor Majors and a hostile work environment. Knox did not make any effort to report harassment to SunTrust Bank officials until after the termination decision had already been made. Moreover, Knox did not make any specific charges of sexual and religious harassment until he had a telephone conversation with Dantzler after 4:00 p.m. on October 17, 2008. This telephone conversation with Dantzler occurred after Knox's meeting with Majors

at 2:45 pm. when Majors informed Knox about the termination decision.

Consequently, Knox is unable to establish two essential elements of his *prima facie* claim. Knox cannot show that SunTrust Bank had any knowledge that Knox was engaged in activity protected by Title VII and the THRA when SunTrust Bank decided to terminate his employment at 8:45 a.m. on October 17, 2008. Knox cannot establish a causal connection between his activity protected under Title VII and the THRA, and the earlier decision to terminate his employment.

Assuming *arguendo* that Knox can make out a *prima facie* claim (which he cannot), the Court must grant summary judgment in favor of SunTrust Bank of the first retaliation claim for alternative reasons. The burden of producing evidence shifts to SunTrust Bank to articulate a legitimate, non-retaliatory reason for its decision to terminate Knox's employment. SunTrust Bank has articulated a legitimate, non-retaliatory reason based on the Alexander incident.

Majors conducted a reasonable investigation by interviewing Alexander and reviewing Alexander's bank records. Based on the facts derived from the investigation, a neutral and unbiased SunTrust Bank official in the Human Resources Department, Betty Dantzler, determined that in her opinion Knox's conduct in making the unauthorized purchase of the $50,000 CD for Alexander constituted manipulation of the employee incentive pay plan which was strictly prohibited by SunTrust Bank's established policy and was a valid ground for termination of employment. SunTrust Bank had a zero tolerance policy for any unauthorized financial transactions in customer bank accounts that were used by an employee to manipulate the incentive pay plan. It was Dantzler who recommended that Knox's employment be terminated. Two other neutral and unbiased SunTrust Bank managers who were not involved in any acts of sexual and religious harassment against Knox, McCoy and Clayton, concurred with Dantzler's recommendation.

By articulating a legitimate, non-retaliatory reason for termination, SunTrust Bank rebuts the inference of retaliation raised by a *prima facie* case based on circumstantial evidence. The burden shifts back to Knox to show that SunTrust Bank's proffered reason for terminating his employment is a pretext to mask or conceal retaliation. *Gembus*, 290 Fed. Appx. at 845; *Bryson*, 498 F.3d at, 570; *Skrjanc*, 272 F.3d at 315. Knox may establish pretext by showing that SunTrust Bank's proffered reason: (1) has no basis in fact; (2) did not actually motivate the decision to terminate Knox's employment; or (3) was insufficient to motivate the decision to terminate Knox's employment. *Sybrandt v. Home Depot, U.S.A., Inc.,* 560 F.3d 553, 558 (6th Cir. 2009); *Ladd*, 552 F.3d at 502; *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

If Knox can make out a *prima facie* claim of retaliation, and if he can show that SunTrust Bank's proffered reason for terminating his employment is unworthy of credence, then it is permissible for the trier of fact to make a finding of retaliation. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 147-48 (2000); *Imwalle*, 515 F.3d at, 544-45; *Abbott*, 348 F.3d at 542. Once an employer's proffered reason for taking the adverse employment action has been shown to be unworthy of credence, retaliation may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. *Reeves*, 530 U.S. at 147-48; *Imwalle*, 515 F.3d at 545.

Knox has not come forward with sufficient proof to preclude summary judgment and show that SunTrust Bank's proffered reason for terminating his employment is a pretext to mask or conceal retaliation. A reasonable jury could not find that SunTrust Bank's proffered reason based on the Alexander incident has no basis in fact, or did not actually motivate the decision to terminate

Knox's employment, or was insufficient to motivate the decision to terminate Knox's employment.

One way an employee may demonstrate pretext is by offering evidence which challenges the reasonableness of the employer's decision to take an adverse employment action. The reasonableness of SunTrust Bank's decision to terminate Knox's employment may be considered to the extent that such an inquiry sheds light on whether the proffered reason was its actual motivation. *Sybrandt*, 560 F.3d at 558, 560-61; *White*, 533 F.3d at 393; *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 576 (Cir. 2003) (en banc). To establish pretext on the ground that the employer's proffered reason did not actually motivate the decision to terminate his employment, Knox is required to show that the sheer weight of the circumstantial evidence makes it more likely than not that SunTrust Bank's proffered reason is a pretext for retaliation. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 503 (6th Cir. 2007); *Manzer*, 29 F.3d at 1084.

After considering the totality of the facts and proof presented in this case, the Court finds that the decision by SunTrust Bank to terminate Knox's employment based on the Alexander incident is reasonable. SunTrust Bank's termination decision is not so extreme, outrageous, harshly unfair, or grossly disproportionate to the seriousness of Knox's misconduct in the Alexander incident that it raises a reasonable inference that the decision was motivated by Title VII retaliation. A reasonable jury could not find it is more likely than not that SunTrust Bank's proffered reason for terminating Knox's employment is unworthy of belief and a pretext for retaliation.

Even if Knox could show that SunTrust Bank's investigation of the Alexander incident was flawed and that its proffered reason for terminating employment is ultimately found in hindsight to be mistaken, trivial, or baseless, SunTrust Bank is entitled to summary judgment based on the employer "honest-belief" rule. *Sybrandt*, 560 F.3d at 558-60; *Niswander v. Cincinnati Ins. Co.*, 529

F.3d 714, 728 (6th Cir. 2008); *Abdulnour*, 502 F.3d at 502-03; *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 714-15 (6th Cir. 2007); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707-09 (6th Cir. 2006); *Smith v. Chrysler,* 155 F.3d 799, 806-07 (6th Cir. 1998).

To preclude summary judgment, Knox must to do more than merely show there is a dispute over the facts upon which his termination from employment was based, the Alexander incident. *Abdulnour*, 502 F.3d at 502; *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Knox must present direct or circumstantial evidence from which a reasonable jury could find that SunTrust Bank did not have an honest belief in its proffered reason for termination. *Abdulnour*, 502 F.3d at 502; *Braithwaite*, 258 F.3d at 494. If at the time it made the decision to terminate Knox's employment SunTrust Bank held an honest belief in its proffered non-retaliatory reason, then Knox cannot establish that the proffered reason is a pretext for retaliation simply because it is ultimately shown to be incorrect or a mistake. *Sybrandt*, 560 F.3d at 559; *Abdulnour*, 502 F.3d at 502; *Niswander*, 529 F.3d at 728; *Wright*, 455 F.3d at 70-08; *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *Smith,* 155 F.3d at 806.

A jury may not reject SunTrust Bank's proffered reason for terminating Knox's employment based on the Alexander incident unless there is a sufficient basis in the evidence for doing so. This is because such a rejection by the jury would impermissibly shift the ultimate burden of proving the retaliation claim from plaintiff Knox to defendant SunTrust Bank. It is Knox who bears the burden of producing sufficient evidence from which a reasonable jury may find in his favor on his retaliation claim and reject SunTrust Bank's proffered reason as a pretext. *Abdulnour*, 502 F.3d at 502; *Manzer*, 29 F.3d at 1083.

In *Clay*, 501 F.3d at 714-15, the Sixth Circuit explains that the honest-belief rule provides

an employer with one last opportunity to prevail on summary judgment.  The honest-belief rule allows an employer to rebut a Title VII plaintiff's  circumstantial evidence of pretext by demonstrating that the employer's actions, while perhaps mistaken, foolish, trivial, or baseless, were not taken with discriminatory or retaliatory intent.  *Id*.; *Smith,* 155 F.3d at 806.

The protection afforded to SunTrust Bank under the honest-belief rule is not automatic.  Once SunTrust Bank is able to point to particularized facts that motivated its adverse employment decision (the Alexander incident), Knox has the opportunity to produce proof to the contrary.  Knox has an opportunity to produce proof showing that SunTrust Bank made a significant error in its investigation of the Alexander incident or in its decisionmaking process too obvious to be unintentional.  *Wright*, 455 F.3d at 708; *Smith,* 155 F.3d at 807.  On the other hand, SunTrust Bank is not required to conduct a flawless investigation into the Alexander incident.  The law does not require that the decisional process used by SunTrust Bank be perfect or that its investigation of the Alexander incident left no stone unturned.  Rather, the critical inquiry is whether SunTrust Bank made a reasonably informed and considered decision to terminate Knox's employment based on an honestly held belief in a legitimate, non-retaliatory reason which was supported by particularized facts after a reasonably thorough investigation.  *Sybrandt*, 560 F.3d at 558-59; *Abdulnour*, 502 F.3d at 502-03; *Wright,* 455 F.3d at 708-09; *Smith*, 155 F.3d at 806-07.

The facts and proof in the record establish that SunTrust Bank conducted a reasonably thorough investigation of Knox's conduct in the Alexander incident.  SunTrust Bank made a reasonably well-informed and considered decision to terminate Knox's employment based on particularized facts obtained during the investigation.  A reasonable jury at trial could not find that SunTrust Bank lacked an honest belief in its proffered reason for terminating Knox's employment.

Due to application of the employer honest-belief rule, Knox cannot show that SunTrust Bank's proffered reason for termination is a pretext for retaliation.

To defeat Knox's retaliation claim, SunTrust Bank need not prove that Knox actually used Alexander's money market funds to purchase the $50,000 CD without Alexander's authorization. Rather, SunTrust Bank needs to show that its decision to terminate Knox's employment was based on an honestly held belief in a nondiscriminatory or nonretaliatory reason supported by the particularized facts after a reasonably thorough investigation of Knox's conduct in the Alexander incident. *Wright*, 455 F.3d at 709. This Court concludes that SunTrust Bank has demonstrated that it is entitled to invoke and rely on the employer honest-belief rule.

For all of these reasons, Knox's first retaliation claim will be dismissed on summary judgment.

## VII.    Second Retaliation Claim: Loss of Employment Opportunity

Finally, Knox claims that Majors retaliated by making negative and inappropriate comments about Knox to a potential employer, Regions Bank, which caused Knox to lose an employment opportunity with Regions Bank. Knox contends that SunTrust Bank is liable for the retaliatory conduct of its supervisory employee, Majors.

After his employment with SunTrust Bank was terminated, Knox submitted a job application to Regions Bank. One night Knox received a telephone call a lady who said that she worked in the Human Resources department at Regions Bank. The caller indicated that she had some knowledge about Knox's problems with Majors at SunTrust Bank but she did not reveal the source of that knowledge or information. Knox testified to the following in his deposition:

> Q.    Do you know whether Regions Bank ever contacted Mr. Majors at
> any time after you were terminated?

| | |
|---|---|
| A. | Yes, sir. |
| Q. | How do you know that? |
| A. | Because the HR lady [from Regions Bank] called me at my house late one evening and told me that it was an unofficial interview, told me that they [Regions Bank] weren't seeking to actively hire at that time for that position, although it had been open for some number of months. Told me that - - she knew that I worked for Mr. Majors at that branch [Bridgeview branch], which was not part of my resume but she knew that, knew who I was. Asked me questions about what was happening now with that; very, very odd enough line of questioning that I asked her why she was calling. |
| Q. | What did she say? |
| A. | She told me that it was an unofficial interview. |
| Q. | Did you tell you anything - - that she and Mr. Majors had any conversations? |
| A. | I don't recall if she specifically said she had spoken to Mr. Majors. But she did - -did know that that's who I worked for, and she was aware of what had happened. |
| Q. | What was she - - what was she aware of happening? |
| A. | She was aware that - - she let me know that she heard - - I heard, you know, what happened. I know you're no longer there. Is that still - - asked me if that was still - - anything still happening with that. |

[Knox's Deposition pp. 137-138; Court Doc. No. 30-1, pp. 60-61].

The Court concludes that the second retaliation claim must be dismissed on summary judgment because Knox lacks sufficient evidence admissible under the Federal Rules of Evidence to prove this claim. Based on the facts and proof that would be admissible at trial, a reasonable jury could not find in Knox's favor. Knox has not identified the mystery lady from the Human Resources Department at Regions Bank who telephoned him. Knox has not submitted a sworn affidavit or deposition from this person. Knox cannot testify at trial about the substance of any statements made to him by the unidentified lady from Regions Bank because it would be rank hearsay and inadmissible under Rules 801 and 802 of the Federal Rules of Evidence.

Moreover, Knox cannot remember whether the lady from Regions Bank said that she had communicated with Majors. It is entirely possible that she may have received her information about

Knox's problems with Majors and SunTrust Bank from a source other than Majors. Majors denies talking with anyone at Regions Bank about Knox. When Knox alleges that it is his impression or belief that Majors made negative and inappropriate comments about Knox to an employee or representative of Regions Bank, Knox indulges in mere speculation and conjecture. This is insufficient to preclude summary judgment and the second retaliation claim must be dismissed.

## VIII.  Conclusion

The defendants' motion for summary judgment [Doc. No. 25] is **GRANTED IN PART and DENIED IN PART** as follows. The summary judgment motion is **GRANTED IN PART** under Fed. R. Civ. P. 56 to the extent that: (1) plaintiff Knox's complaint against defendant SunTrust Banks, Inc. is **DISMISSED WITH PREJUDICE**; and (2) plaintiff Knox's claims of retaliation against defendant SunTrust Bank are **DISMISSED WITH PREJUDICE**.

The remainder of the defendants' summary judgment motion is **DENIED** because there are genuine issues of material fact in dispute which preclude summary judgment under Rule 56. Plaintiff Knox may proceed to trial on his claims under Title VII and the THRA that he is a victim of sexual and religious harassment which created a hostile work environment and which culminated or resulted in the termination of his employment.

The issues that remain for trial are: (1) whether Knox is the victim of a hostile work environment based on sexual harassment by supervisor Majors; (2) whether Knox is the victim of a hostile work environment based on religious harassment by supervisor Majors; (3) if Knox proves that he is the victim of a hostile work environment, did the hostile work environment cause Knox to suffer damages without the termination of his employment; and (4) if Knox proves that he is the victim of a hostile work environment, did the hostile work environment culminate or result in the

termination of his employment.

SO ORDERED.

ENTER this the 5th day of November, 2010.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE